Joel B. Robbins, Esq. (011065)
Jesse M. Showalter, Esq. (026628)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Tel: (602) 285-0100
Fax: (602) 265-0267
joel@robbinsandcurtin.com
jesse@robbinsandcurtin.com
*Attorneys for Plaintiff Mariah Valenzuela*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mariah Valenzuela, an individual, | No. _____ |
| Plaintiff, | **COMPLAINT** |
| vs. | (Tort – Civil Rights) |
| City of Phoenix, a municipality; and Michael McGillis, an individual, | (Jury Trial Demanded) |
| Defendants. | |

Plaintiff Mariah Valenzuela complains against Defendants City of Phoenix and Michael McGillis and alleges as follows:

**PARTIES**

1. Plaintiff Mariah Valenzuela is a resident of Maricopa County, Arizona.

2. Defendant City of Phoenix is a municipality and a political subdivision of the State of Arizona, organized and existing under the laws of the State of Arizona. It is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

3. Defendant Michael McGillis is an individual and a resident of Maricopa County, Arizona.

4. At all times alleged herein, Defendant McGillis was a police officer employed by the City of Phoenix acting within the course and scope of his employment and under

color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

5. For Plaintiff's claims under Arizona state law, Defendant City of Phoenix is responsible for the conduct of its officers and employees, including Defendant McGillis. It is liable to Plaintiff for the damages resulting from their conduct under the theory of *respondeat superior*.

**JURISDICTION AND VENUE**

6. The amount in controversy exceeds the jurisdictional limitations of this Court.

7. This Court has jurisdiction over Plaintiff's federal civil rights claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

8. This Court has supplemental jurisdiction over claims arising under the laws of the State of Arizona under 28 U.S.C. § 1367(c).

9. The events giving rise to this action occurred in Maricopa County, Arizona. Defendant City of Phoenix is a political subdivision of the State of Arizona, and Defendant McGillis resides within Maricopa County, Arizona. Thus, venue is proper in the District of Arizona under 28 U.S.C. § 1391(b).

10. As to Plaintiff's claims under Arizona state law, Plaintiff served a timely notice of claim under A.R.S. § 12-821.01 upon the City of Phoenix on July 13, 2020. The notice of claim complied in all ways with the statute, was timely served, and is deemed denied by operation of law.

**JURY DEMAND**

11. Plaintiff demands a jury trial.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

12. On January 16, 2020, shortly before 11:50 p.m., Plaintiff Mariah Valenzuela went to Filiberto's located at 4201 N. 7th Avenue in Phoenix, Arizona.

13. At approximately 11:50 p.m., Defendant McGillis initiated a traffic stop in his white DUI van on Mariah, reportedly for a traffic violation.

14. According to Defendant McGillis, he was traveling south on N. 7th Avenue when "the listed vehicle exited out from a private driveway at 4129 7th Avenue (The Rock Bar) and entered the two way left turn lane and continued south towards W. Indian School Road."

15. In fact, Mariah was exiting Filiberto's located at 4201 N. 7th Avenue, which is 1/10th of a mile from the Rock Bar's driveway at 4129 N. 7th Avenue.

16. Mariah pulled over in the parking lot of Budget Suites Hotel at 611 W. Indian School Road.

17. The footage from Defendant McGillis's Axon bodycam captures the encounter.

18. The video begins with Defendant McGillis following the Chevrolet Equinox Mariah was driving.

19. At 00:55 on the video, Defendant McGillis exits his vehicle and approaches Mariah.

20. Defendant McGillis says, "Hi" as Mariah is exiting her vehicle with her cellphone in her hands and both hands clearly visible. Mariah said, "Oh, hey." Defendant McGillis then asks for Mariah's license; at which time she calmly indicates she does not have it with her.

21. Defendant McGillis asks a second time, "Do you have any ID on you?" In response, Mariah calmly asks why she was pulled over. Rather than answer, Officer McGillis asks Mariah if the car is hers and she indicates that it is not.

22. Defendant McGillis then walks to the rear of the car to call in the license plate while Mariah stands in place looking down at her phone.

23. At 1:21 on the video, Defendant McGillis approaches Mariah, and asks her for a third time whether she has an ID. Mariah continues to stand looking at her phone and calmly replies, "No, why am I being pulled over?"

24. Without reason or provocation, Defendant McGillis suddenly and forcefully grabs Mariah, yells for her to put her hands behind her back, and slams her against her car.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ◆ Fax: (602) 265-0267

25. Defendant McGillis grips Mariah by her left wrist, which he held behind her back in what is known as a "pain compliance" or "control hold."

26. In response to Defendant McGillis's unprovoked attack, the startled, injured, and fearful Mariah begins to scream out in pain and fear hoping to get the attention of bystanders.

27. In response to Mariah's terrified screams, Defendant McGillis continues his attack. He pushes Mariah face-first into the concrete and places his body on her back.

28. Defendant McGillis used the weight of his body to hold Mariah face-down on the ground for over two minutes while pressing her into the concrete.

29. While on top of Mariah, who is 5'2" and weighs 98 pounds, Defendant McGillis screams for her to give him her other arm while he repeatedly pushes her face and body into the concrete. It was impossible for Mariah to comply with Defendant McGillis's unreasonable demands because he had trapped her other arm beneath her body and was holding it there with his weight.

30. Defendant McGillis held his hand on Mariah's neck to press her face into the concrete and ignored her screams for help.

31. Over and over, Mariah asked, "What did I do?" and asked, "Why did you tackle me?" Several times, Mariah states that she has her ID in the car.

32. While on top of Mariah, with her hands cuffed behind her back and completely compliant, Defendant McGillis's states over the radio, "I have her detained but she's real uncooperative."

33. After she was assaulted, handcuffed, and placed under arrest without probable cause, Mariah asked why she was being arrested. Defendant McGillis ignored her questions, told her to stop arguing, and pushed her face-first into her vehicle and demanded, "why don't you act like a young lady?"

34. Once backup arrives, Mariah is placed in the backseat of a police vehicle.

35. At no point did Defendant McGillis ask about or mention the smell of alcohol or marijuana or ask Mariah if she had been drinking, despite the fact he had been on top of her for several minutes.

36. Defendant McGillis's bodycam video captures him describing the situation to Sgt. Walter and indicating he had detained Mariah for "No ID."

37. In fact, the first mention of alcohol/drugs on Defendant McGillis's bodycam was nearly 26 minutes into the encounter.

38. At some point, Defendant McGillis requests that a supervisor respond to the scene.

39. Sgt. Walter arrives at approximately 0018 hours.

40. Sgt. Walter's bodycam captures him speaking privately with Mariah and evaluating all of her injuries to determine if EMS needed to be called. At this time, Mariah states she needs to "go home to do something about this man." Sgt. Walter responds, "We're getting through this process, okay?"

41. Following his evaluation of Mariah's injuries, Sgt. Walter states, "it might need a stitch, so we'll do the use of force on it and call it good." Defendant McGillis can be heard chuckling in response to Sgt. Walter's statement that Mariah might need stitches. Also disturbing is the officer captured on bodycam footage is also smiling at this pronouncement.

42. Officer McGillis gives a brief description of his encounter stating, "I had to push her up against the car and, because she was screaming and flailing, going crazy, I put her on – she wouldn't give me her arm – I put her on the ground."

43. At this point, Sgt. Walter makes a phone call to Lieutenant Erik Dobransky, who, by the audio on the bodycam footage, appears to have already known about the incident. Sgt. Walter describes Mariah's injuries, indicating the cut on the top of her head might need a stitch and that she might have "bumped" her head when Defendant McGillis took her to the ground. Sgt. Walter then indicates he is going to do the use of force documentation.

44. Lt. Dobransky requests confirmation that there were no "strikes," which Sgt. Walter confirms, and then indicates that Mariah is "freaking out about it" and is "super emotional and super looney tunes."

45. When Lt. Dobransky asks why she is in custody, Sgt. Walter states, "DUI." Lt. Dobransky tells Sgt. Walter to take photos and do the Injured Prisoner/Use of Force "just to CYA ourselves." Lt. Dobransky then asks, "Is she alleging any misconduct or anything, or just complaining?" Sgt. Walter responds, "She thinks she was kinda manhandled or whatever, but I don't think it's – I'm getting ready to review the body camera right now – she's super all over the place."

46. Lt. Dobransky then orders Sgt. Walter to review the bodycam video "to make sure it's good to go and then we'll do the use of force, just to CYA everybody, cover them."

47. Sgt. Walter then leaves his vehicle and approaches the Phoenix Fire Department and indicates that this is "just a 100% CYA, by the way."

48. As a result of the Defendant McGillis's wrongful conduct, Plaintiff sustained serious injuries and emotional distress, and she incurred medical expenses, other economic losses, and general damages.

49. At the time Defendant McGillis attacked Mariah, he had no reason to believe that she was armed.

50. At the time Defendant McGillis attacked Mariah, he had no reason to believe that she had committed any crime.

51. At the time Defendant McGillis attacked Mariah, she did not pose a threat to Defendant McGillis or anyone else.

52. At the time Defendant McGillis attacked Mariah, she was fully compliant and had not resisted or defied any police order or request.

53. After the assault, Defendant McGillis placed Mariah under arrest claiming that she had committed a variety of crimes, including DUI and resisting arrest.

54. At the time of the arrest, Defendant McGillis lacked probable cause to believe that Mariah had committed any crime.

55. Defendant McGillis arrested and charged Plaintiff with crimes to cover up his own use of excessive force.

56. Mariah ultimately accepted responsibility for the civil infraction.

57. All criminal charges against Mariah were dropped.

**The City of Phoenix's Policies, Customs, and Procedures**

58. Defendant City of Phoenix is responsible for training and supervising Phoenix police officers, including Defendant McGillis, regarding the use of force.

59. Defendant City of Phoenix has a policy, custom, or procedure for training and allowing its officers to "escalate" situations (*i.e.*, to use more force than is reasonably necessary or appropriate to respond to situations).

60. Defendant City of Phoenix has a policy, custom, or procedure of failing to review use of force reports and failing to discipline officers involved in excessive force incidents, thereby turning a blind eye, and creating a culture of impunity that encourages officers to use excessive force.

61. On information and belief, Defendant City of Phoenix had received multiple prior complaints about Defendant McGillis, including complaints that he had used excessive force and that he had made false statements in reports.

62. On information and belief, Defendant McGillis either was, or should have been, flagged by the City of Phoenix's early warning software as an officer in need of supervision, discipline, or retraining.

63. On information and belief, the City of Phoenix failed to respond to early warnings about Defendant McGillis's conduct, or no early warnings were issued because the City of Phoenix's parameters for its early warning software were so loosely defined that the City knew that problem officers would not be identified.

# COUNT I
## Assault and Battery
### (Against Defendants City of Phoenix and Michael McGillis)

64. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

65. At all relevant times, Defendant McGillis was acting in the course and scope of his employment for Defendant City of Phoenix.

66. Defendant McGillis assaulted and battered Plaintiff.

67. Defendant McGillis intentionally caused harmful or offensive contact to Plaintiff.

68. The assault and battery were not justified.

69. As a result of the assault and battery, Plaintiff sustained serious injuries and emotional distress, and she incurred medical expenses, other economic losses, and general damages.

# COUNT II
## Negligence
### (Against Defendant City of Phoenix)

70. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

71. Defendant City of Phoenix owes a duty of care to members of the public with whom its officers come into contact and/or investigate, including Plaintiff.

72. Defendant City of Phoenix breached this duty by failing to adequately supervise its officers, including Defendant McGillis.

73. Defendant City of Phoenix breached this duty by failing to adequately train its officers with respect to the seizure of suspects and the use of force.

74. Defendant City of Phoenix breached this duty by failing to adopt adequate and reasonable policies and training with respect to the seizure of suspects and the risks of using force.

75. As a result of Defendant City of Phoenix's breaches, Plaintiff sustained serious injuries and emotional distress, and she incurred medical expenses, other economic losses, and general damages.

## COUNT III
### 42 U.S.C. § 1983 – Violation of Fourth Amendment
### Right to be Free of Unlawful Seizures and False Arrest
### (Against Defendant McGillis)

76. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

77. Plaintiff has a Fourth Amendment right to be free from unlawful searches and seizures, including false arrests.

78. Defendant McGillis violated Plaintiff's Fourth Amendment rights when he arrested Plaintiff without probable cause to believe that she had committed a crime.

79. Plaintiff suffered damages as the result of the deprivation of her Fourth Amendment right to be free from false arrest.

80. Defendant's actions in falsely arresting Plaintiff were done knowingly, intentionally, maliciously, or with reckless disregard to Plaintiff's constitutional rights, and Plaintiff is entitled to recover compensatory and punitive damages.

## COUNT IV
### 42 U.S.C. § 1983 – Violation of Fourth Amendment
### Right to be Free from Excessive Force
### (Against Defendant McGillis)

81. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

82. Plaintiff has a Fourth Amendment right to be free from unlawful searches and seizures including the use of excessive force.

83. Defendant McGillis violated Plaintiff's Fourth Amendment rights when he used excessive force against Plaintiff.

84. Plaintiff suffered damages as the result of the deprivation of her Fourth Amendment right to be free from excessive force.

85. Defendant's actions in using excessive force against Plaintiff were done knowingly, intentionally, maliciously, or with reckless disregard to Plaintiff's constitutional rights, and Plaintiff is entitled to recover compensatory and punitive damages.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax: (602) 265-0267

# COUNT V
## 42 U.S.C. § 1983 – *Monell* Claim
### (Against Defendant City of Phoenix)

86. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

87. Defendant City of Phoenix was deliberately indifferent to the proper training and supervision of their employees, including Defendant McGillis, regarding the appropriate use of force.

88. The City of Phoenix has policies, customs, or procedures that were deliberately indifferent to the rights of citizens to be free from excessive force, including the following:

   a. Failing to train its officers regarding the proper use of force;

   b. Allowing and encouraging Phoenix Police Officers to escalate situations by using force that was not reasonable or necessary under the circumstances;

   c. Failing to review uses of force, use of force reports, and failing to adequately monitor, investigate, discipline, and retrain officers involved in excessive force incidents, and, therefore, creating a culture of impunity that encouraged officers to use excessive force;

   d. Failing to monitor and investigate the frequency and extent of officer uses of force; and

   e. Failing to monitor and identify officers who use excessive force.

89. The City of Phoenix was deliberately indifferent to the Fourth Amendment rights of members of the public, including Plaintiff.

90. The City of Phoenix's unconstitutional policies, customs, and procedures caused or contributed to the deprivation of Plaintiff's rights under the Fourth Amendment.

91. The City of Phoenix is liable for all damages arising from the constitutional violations it caused.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For special damages, including but not limited to current and future medical fees and expenses, lost wages, and other economic losses;

B. For general and compensatory damages, including but not limited to pain and suffering, emotional distress, and loss of enjoyment of life;

C. For punitive damages against Defendant McGillis;

D. For taxable costs and pre- and post-judgment interest to the extent permitted by law;

E. For attorneys' fees and costs under 42 U.S.C. § 1988 to the fullest extent permitted by law; and

F. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED: January 14, 2021

**ROBBINS & CURTIN, p.l.l.c.**

By: /s/ Jesse M. Showalter
Joel B. Robbins
Jesse M. Showalter
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
*Attorneys for Plaintiff Mariah Valenzuela*